HANLON GREGORY GALVANIZING COMPANY, Respondent, *v.* LUDWIG VOGELSTEIN and ERNEST G. HOTHORN, Appellants.

First Department, July 13, 1917.

Contract — goods sold and delivered — principal and agent — evidence insufficient to establish authority of agent to make sale or ratification by principal.

Action founded on the breach of an alleged contract to sell and deliver certain metal to the plaintiff. The defendant had employed a certain person to obtain information with respect to the metal trade and he was also to receive a commission in the event that he made sales for the defendant. It is claimed by the plaintiff that said person and another person employed by him made a contract for sale binding upon the defendant. Evidence examined, and *held*, insufficient to justify a finding by the jury that the agent of the defendant had authority to make the alleged contract of sale, or to justify a finding that the defendant ratified the contract if originally unauthorized and that the complaint should be dismissed.

APPEAL by the defendants, Ludwig Vogelstein and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 3d day of November, 1916, upon the verdict of a jury, and also from an order entered in said clerk's office on the 1st day of November, 1916, denying defendants' motion for a new trial made upon the minutes.

*Alfred G. Reeves,* for the appellants.

*Henry L. Scheuerman,* for the respondent.

LAUGHLIN, J.:

The plaintiff is a corporation engaged at Pittsburgh, Penn., in the business of galvanizing iron and steel in which it uses spelter, which is the trade name for zinc. The defendants constitute the firm of " L. Vogelstein & Co." and are wholesale metal brokers in the city of New York. One Wile, who was connected with the " Wile Electric Furnace Company " at Pittsburgh, and was a metal broker there, on his own solicitation was employed by the defendants on the 23d of June, 1915, on trial for a month, to obtain information for them with respect to the metal trade, for which he was to

receive as compensation the sum of $100 and in the event that the defendants made any sales through him he was also to receive a commission of one-quarter of one per centum on such sales. Wile then represented the Great Western Smelting and Refining Company at Pittsburgh, and employed one Newton as a salesman on a commission basis. The plaintiff claimed that the defendants through Wile and Newton, at Pittsburgh, on the 26th day of June, 1915, entered into a contract, negotiations for which had been opened the day before, in behalf of defendants, to sell and deliver to it two cars of " Prime Western Spelter " at twenty cents per pound, one to be delivered on the fifth of July, and the other between the fifteenth and twentieth of the same month, f. o. b. St. Louis, the terms of payment being on sight draft against bill of lading. The defendants put in issue the material allegations of the complaint. The defendants refused to recognize the contract negotiated by Wile and Newton. The questions presented by the evidence were whether Wile and Newton, or either of them, assumed to negotiate a binding contract for the sale of the spelter by the defendants, and whether they were authorized so to do, or defendants ratified the contract if originally unauthorized.

The plaintiff claimed, and gave evidence tending to show, that a contract was negotiated verbally on Friday, June twenty-fifth, and Saturday, June twenty-sixth, at personal interviews between Hanlon, its manager, and said Newton, and by conversations between Hanlon and Wile over the telephone. There was no evidence that the defendants in any manner ever employed Newton, or that Wile had any authority to make the contract upon which plaintiff ·seeks to recover. The trial court ruled as matter of law that the contract, if made, was unauthorized, but left it to the jury to determine whether or not it was made, and if so, whether the defendants ratified it. If the instructions of the court were followed, the jury must have found that Newton and Wile, on ·June twenty-fifth and twenty-sixth, negotiated a contract for the sale of spelter to the plaintiff by defendants which they were not authorized to make, and that the defendants subsequently ratified it.

I am of opinion that the finding of the jury, which was

necessary under the instructions of the court to arrive at the verdict rendered, that the plaintiff had given an order to Wile for the defendants for spelter on the 26th of June, 1915, when Wile so telegraphed the defendants, is against the weight of the evidence; but in that view it would be necessary to order a new trial, which I think is not required, for as I view the evidence, it is wholly insufficient to show a ratification by the defendants of any contract made by Wile with the plaintiff, and, therefore, the complaint should have been dismissed. The most favorable view of the evidence to the plaintiff with respect to a contract having been negotiated by Newton and Wile and with respect to a ratification thereof by defendants, fails, I think, to present a question of fact for the jury. Viewed in that light it may be said that there is evidence tending to show that on the twenty-fifth of June, when concededly neither Newton nor Wile had any authority to make a contract for the defendants, Newton opened negotiations with the plaintiff through Hanlon for the sale of spelter by the Great Western Smelting and Refining Company, and Hanlon talked with Wile over the telephone and requested him to obtain a quotation from the defendants for two cars of spelter, which shows that he understood that neither Newton nor Wile had authority to make a contract for defendants at that time. The evidence further showed that Wile that day wired the defendants asking them to quote *one* car of spelter for the plaintiff. The defendants replied on the same day by letter which Wile received on the twenty-sixth of June, not, however, giving him a quotation as he had requested, but asking him to obtain a " firm bid " on the basis of twenty cents per pound at St. Louis, and requesting that he wire them on obtaining such a bid and that they would then wire him whether or not they would accept the order. There is no evidence that the defendants in any manner held Wile out as their agent, and the evidence fairly shows that plaintiff understood that Wile was acting as a broker. A " firm bid," according to the evidence, is an offer by the purchaser which does not become binding until accepted by the seller. On June twenty-sixth, after receiving the defendants' letter requesting him to obtain a firm bid, Wile wrote defendants in reply to that letter and

stated that defendants' price had not been accepted by any of the concerns to which it had been quoted, but that it was still being considered by the plaintiff and one or two others. According to the testimony of Newton and Wile the plaintiff did not agree to take spelter at the price specified until the twenty-sixth, and then, according to the testimony of Wile, the quotations given to the plaintiff on a preceding day in behalf of the Great Western Company, having been good for the day only, he conceived the idea of substituting the defendants as the sellers in place of the other company, and thereupon wired the defendants as follows:   " Hanlon and Gregory have placed order for Two Cars one car July Fifth other tenth to fifteenth twenty cents east stlouis sight draft confirmation follows."

Hanlon concededly on the twenty-sixth made out a formal order addressed to the Great Western Company for the purchase of the spelter, and either delivered it to Newton or mailed it to Wile that day.   He says that it was intended as an order for the defendants; but I think the preponderance of the evidence shows that he supposed that he was purchasing from the other company and concededly on the twenty-eighth, when Newton took the order to Hanlon by Wile's direction to have the name of the defendants substituted for the other company, Hanlon gave an order to the defendants under date of June twenty-eighth for the spelter and that is the order on which this action is based.   Owing either to Hanlon's mistake in making out the order or to the fact that he had negotiated the purchase of the spelter from the other company, he gave no order either to Newton or Wile for the defendants until the twenty-eighth, and the confirmation referred to in Wile's telegram to the defendants of June twenty-sixth did not follow immediately, as stated in the telegram, nor until Wile obtained the order of June twenty-eighth addressed to defendants, when he mailed it to them and they received it on the twenty-ninth.   The uncontroverted evidence shows that on receipt of this order of June twenty-eighth, which is the confirmation referred to in Wile's telegram of the twenty-sixth, the defendants immediately telegraphed Wile and wrote him refusing to accept the order. The alleged ratification of the unauthorized contract is based

on the action taken by defendants on the receipt of Wile's telegram of June twenty-sixth. Concededly, there was no communication between the defendants and the plaintiff upon which a ratification can be based. The alleged ratification, therefore, rests solely upon the said letter from the defendants to Wile. The telegram from Wile to the defendants of the twenty-sixth was delivered after business hours on the day of its date at the residence of one of the defendants who was not familiar with the facts and he, on the morning of June twenty-eighth, which was Monday, brought it to defendants' office and made inquiries concerning the matter, and thereupon defendants wrote Wile under date of June twenty-eighth, acknowledging the receipt of his telegram and of his letter of the twenty-sixth in reply to their letter of the twenty-fifth.

It is argued in behalf of the respondent that Wile's telegram of the twenty-sixth was notice to defendants that he had departed from their instructions to obtain a firm bid and that he had assumed to make a contract in their behalf and that they were called upon to repudiate it both by notifying him and by notifying the plaintiff. I am of opinion that they had a right to await the confirmation referred to in Wile's telegram and, as already observed, upon receipt of that showing that it was an order instead of a firm bid, they promptly repudiated it. As the court correctly ruled, the defendants had vested neither Wile nor Newton with authority to make a contract in their behalf, and they held neither out in such a manner as to estop them from denying authority to make a contract in their behalf. As further evidence that the defendants by their letter of June twenty-eighth, acknowledging the receipt of Wile's telegram of June twenty-sixth, did not intend to ratify any contract he may have assumed to make in their behalf, it appears that the market price of spelter had gone up at that time. Wile, in his letter of the twenty-sixth, had requested defendants to wire him on Monday morning, June twenty-eighth, quotations on two cars of spelter for delivery in August, September and October, and on Monday morning, before writing Wile acknowledging receipt of said telegram, defendants wired him that the price of spelter for such deliveries would be twenty-one and three-eighth cents per pound. The learned counsel for the respond-

ent argued that the defendants must have known from the tenor of Wile's telegram of June twenty-sixth, that he had exceeded his authority and had assumed to accept an order in their behalf, and that by merely acknowledging the receipt of the telegram without repudiating the order they attempted to obtain the benefit of any change in the market price before receiving a confirmation, and intended to accept if the market went down and to repudiate it if it went up. However that may be, concededly the defendants were not bound by the order, even if it had been placed with Wile on the twenty-sixth, and I think their letter merely acknowledging receipt of the telegram, when they had not received the confirmation, should not be construed either as matter of law or as matter of fact as a ratification of an unauthorized contract. Moreover, the facts with respect to the negotiations for the contract had not been fully presented to the defendants for at the time Wile's telegram of the twenty-sixth was sent he had not in fact received any order for the sale of spelter by them, and if they had attempted to ratify and accept the order they would not have been in a position to enforce the contract against the plaintiff. I am, therefore, of opinion that the complaint should have been dismissed.

It follows, therefore, that the judgment and order should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., SCOTT, PAGE and DAVIS, JJ., concurred.

Judgment and order reversed, with costs, and complaint dismissed, with costs.